Opinion delivered June 9, 1886.

---

[No. 3919.]

### JOSH CONLEY *v.* THE STATE.

THEFT—EVIDENCE.—It is a recognized rule of evidence that "it is competent for the State, in a trial for theft, to prove the theft of other property at the same time and place as the property in question, if such proof conduces to establish identity in developing the *res gestæ*, or to prove the guilt of the accused by circumstances connected with the theft, or to show the intent with which the accused acted with respect to the property for the theft of which he is on trial."   See the opinion *in extenso* for evidence *held*, not to come within the purview of the rule, and, therefore, to have been erroneously admitted.

APPEAL from the District Court of Travis.    Tried below before the Hon. A. S. Walker.

The conviction in this case was for the theft of a bridle, saddle, and blanket of value exceeding twenty dollars, the property of Henry Lubbock, in Travis county, Texas, on the twenty-fourth day of December, 1885. A term of two years in the penitentiary was the punishment awarded the appellant.

Henry Lubbock was the first witness for the State. He testified that, at night, on or about November 15, 1885, he went to the Shamrock saloon, on East Pecan street, in the city of Austin, Texas. He hitched his horse, on which he had his saddle, worth thirty-five dollars, his blanket, worth about five dollars, and his bridle, in front of the saloon, and went in. About ten o'clock he stepped to the door, and saw that his horse, saddle, bridle, and blanket were all right, and went back into the saloon. When he went to leave the saloon about midnight, his horse, saddle, bridle, and blanket were gone. On the next evening he found his horse in Mrs. Bunton's stable, south of Austin, on the opposite side of the river. Mrs. Bunton lived about one mile from Austin, and about one hundred yards from the house of the witness. On or about December 27, 1885, Tom Doss told witness where he would find his saddle, bridle, and blanket. Acting upon that information, witness went with officer Chenneville to a loft at Chapman's stable, in the city of Austin, and found the said articles under some fodder. The articles described belonged to the witness, and were taken from his possession without his knowledge or consent. Witness did not know the defendant.

John Chenneville testified, for the State, that he knew the defendant. Defendant's headquarters, at the time of his arrest, were in the loft over Chapman's stable, two blocks from the Black Elephant saloon, and three blocks from the Shamrock saloon. Witness found the saddle, bridle, and blanket in question, and some harness, under some fodder, in the loft occupied by the defendant. He also found a horse tied in the stable yard, which horse was afterwards claimed by Lee Boyce. Witness saw the defendant on Pecan street, while witness was on his way to the station with the saddle, bridle, and blanket, and told him that the marshal wanted to see him at police headquarters. He went with witness, and witness arrested him after getting to the station.

Cross-examined, the witness testified that he did not see the defendant in possession of any of the property described. The horse found tied in the stable yard was claimed by Lee Boyce,

Defendant's cream colored horse was at that time in the stable. It was the understanding of the witness that the defendant had rented the rear part of the stable and the loft.

C. C. Chapman testified, for the State, that the defendant rented the shed of his stable, and the loft over it. Defendant put the fodder in that loft. Witness did not know who put the bridle, saddle, and blanket in the loft. The cream colored horse belonged to defendant. Witness knew nothing about the other horse, more than that it had been kept tied in the lot for four days, when Chenneville took it off. Defendant some times sold fodder to the witness, and witness's boys were in the habit of going into the loft for fodder, when it was needed.

Tom Doss testified, for the State, that he and his brother found Henry Lubbock's saddle, bridle, and blanket, in the loft over the shed of Chapman's stable. The loft, with the fodder in it, was then in the defendant's possession. The saddle, bridle, and blanket, were not put in that loft by either the defendant or his brother.

Cross-examined, witness said that he and his brother were step-sons of Chapman. The witness and his brother were playing in the loft when they found the articles described. They had authority to go into that loft for fodder whenever it was needed. Defendant's cream colored horse was kept in the stable. The horse which Chenneville found tied in the lot had been there four days, and during that time was kept in plain view of people passing. After he found the saddle, bridle, and blanket, Mr. Chenneville made further search under the fodder, and found some harness. The witness had never seen either saddle, harness, bridle, or blanket, in the defendant's possession.

The motion for new trial raised the questions discussed in the opinion.

*Rector, Moore & Thompson,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, JUDGE. This is a conviction for theft of a saddle, bridle, and blanket, the property of Henry Lubbock.

On or about the fifteenth day of November, 1885, Henry Lubbock lost a horse, saddle, bridle, and blanket. These were taken from the front of a saloon in the city of Austin, about twelve o'clock at night. On the next afternoon, about one mile from

Austin, south of the river, in Mrs. Bunton's stable, Lubbock
found his horse.   Conley had rented from C. C. Chapman a shed
attached to Chapman's stable, with a loft above, situated in the
city of Austin, and in this loft defendant kept his fodder with
which to feed his horse, a cream colored pony.   A few days after
Christmas, 1885, Tom Doss and his brother, who had free access
to the loft, found Lubbock's saddle, bridle, and blanket in the
north east corner of the same, under the fodder.

Under the fodder was also found some harness.   In the yard
of Chapman's stable, to which was attached the shed rented and
used as a stable by defendant, was also found hitched a horse,
the property of one Lee Boyce, which had been tied in the lot or
yard about four days, in plain view of the passers by.   With
this horse the evidence fails to show any connection whatever,
either with Lubbock's horse, the saddle, bridle, or blanket; or
that defendant ever claimed, fed, or did any thing whatever
tending to show his connection with the same.   In fact, there is
just as much evidence that Chapman hitched this horse in the
yard, as there is that defendant did so, for this lot was accessible
to and used in common by both.

The State, over the objection of defendant, introduced in evi-
dence the fact that the harness was found under the fodder with
the saddle, and that Boyce's horse was hitched in the yard of the
stable.   Were these competent, admissible facts?

The rule upon this subject is this: It is competent for the
State, in a trial for theft, to prove the theft of other property at
the same time and place as the property in question, if such
proof conduces to establish identity in developing the *res gestœ,*
or to prove the guilt of the accused by circumstances connected
with the theft, or to show the intent with which the accused
acted with respect to the property for the theft of which he is on
trial.   Let us apply this rule to the case in hand.

From a casual inspection it will be seen that the first para-
graph of the rule has no application whatever.   There is no evi-
dence showing that Boyce's horse was taken at the same time
and place as the saddle, etc.   The *res gestœ* of this theft is not
identified or developed; nor does the fact that Boyce's horse was
hitched in the stable lot tend in any manner to identify or de-
velop this transaction.

The second paragraph.   Does the fact that this horse was
hitched in the lot, under the circumstances surrounding it, con-
stitute a fact or link in the chain of facts which tend to connect

the defendant with the theft of the property named in the indictment? If so, it is most evidently competent, for if a fact be competent evidence, though it tends to prove *another offense,* it is no objection to the admission of such fact because of such tendency. The State is entitled to all criminative facts, and the defendant will not be heard to object to the competency of a fact simply because it proves another offense. The question is whether the proposed fact be relevant; if so, it should be admitted. Just what facts are relevant can never be enumerated, because a fact is relevant because other facts are in evidence.

On the other hand, evidence of other crimes should never be received unless clearly admissible, because such evidence, with almost all juries, invariably has a most fearful effect upon the case of the accused.

But let us return to the rule. Does the evidence that Boyce's horse was tied in the lot constitute a relevant fact in this case? Does it in the remotest degree tend to prove that defendant stole the saddle and blanket? If so, in what manner? Now, just here we should be able to point out its pertinency. Its pertinency should be clear, because of its fatal character.

Does this evidence tend to explain the main fact? It does not. Does it constitute a material fact? It does not. Does it tend to explain a material relevant fact? If so, what fact? It can not be found in the record.

The third paragraph of the rule. Now, if defendant concealed the saddle, bridle, and blanket under the fodder in the loft, under the circumstances of this case, his intent is very clear; he is the thief. But the issue in this case was and is whether defendant, in any manner, was connected with these things. Show that he placed them in his loft, and there is no necessity of proof of intent. He denies, and the *State* must prove that he *acted* in some respect towards this property, that he was in possession of the property; and when this is done, then the question of intent may arise. But under the facts of this case, when this is shown, his intent is evident, and needs no explanation from the State.

But let us suppose that the State has shown his possession of the property. How does the fact that the Boyce horse was tied in the yard tend to show the intent of defendant respecting the saddle, etc.? They were not taken at the same time and place, nor is there any connection between them whatever shown by the evidence. When and from where the Boyce horse was taken is not shown. How, then, could this fact have the slightest

bearing upon the intent of the defendant with relation to the property named in this indictment? Before such evidence should be admitted, its relevancy should clearly appear. We should be able readily to place our finger upon its pertinency. Can this be done in this case? Evidently not. This evidence tends to prove the defendant's guilt, because it tends to prove him a thief generally.

We are of the opinion that there was error in admitting this evidence; for which the judgment is reversed and the case remanded.

*Reversed and remanded.*